In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-2360

LAMONTE LAKE,

*Plaintiff-Appellant*,

*v.*

WEXFORD HEALTH SOURCES, INC., and CAROL JACKSON,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:13cv-01408-JES — **James E. Shadid**, *Chief Judge*.

SUBMITTED FEBRUARY 2, 2017 — DECIDED FEBRUARY 15, 2017

Before WOOD, *Chief Judge*, and POSNER and KANNE, *Circuit Judges*.

POSNER, *Circuit Judge*. Lamonte Lake, a prisoner at Illinois' Hill Correctional Center, claims in this suit under 42 U.S.C. § 1983 that Wexford Health Sources, Inc., a contractor serving the state's prisons, and prison dentist Carol Jackson, a Wexford employee, were deliberately indifferent, and thus in violation of the Eighth Amendment, to his need for dental care. Having lost in the district court as a result of the

judge's granting summary judgment in favor of the defend-
ants, Lake appeals, contending that Dr. Jackson had refused
to send him to an outside dentist to extract a decayed tooth
that was causing him pain. He attributes this refusal to what
he alleges to be a Wexford policy of withholding medical
care to save money. That's a common criticism of Wexford,
see Michael Sandler, "Illinois Prison Contractor Paid $3.1
Million to Resolve Complaints Over Five Years," *Modern
Healthcare*, May 20, 2015, www.modernhealthcare.com/
article/20150520/NEWS/150529989 (visited Feb. 8, 2017, as
were the other websites cited in this opinion); Jason Meisner,
"Independent Experts Blast Quality of Medical Care in Illi-
nois Prisons," *Chicago Tribune*, May 19, 2015, www.chicagotri
bune.com/news/ct-illinois-prison-medical-care-met-20150519
-story.html. But there is no evidence that Dr. Jackson was
incapable of competently removing a decayed tooth—
usually not a highly complex procedure.

Before Dr. Jackson was employed by the prison, her pre-
decessor as prison dentist, a Dr. Estaver, had concluded that
one of Lake's teeth, though not the one he later complained
about to Dr. Jackson, should be removed. Lake insisted that
an outside dentist should perform the extraction because, he
said, he does not respond well to local anesthetics. Although
he eventually allowed Dr. Estaver to extract the tooth, it
shattered when Estaver tried to pull it, causing significant
pain. Lake was sent to an outside specialist to complete the
extraction—but not before he told Estaver that the fillings in
two other teeth had fallen out.

The filling in one was temporarily replaced by Estaver,
but when Dr. Jackson replaced Estaver as the prison dentist,
Lake told her that both teeth needed treatment, because the

filling he'd received from Dr. Estaver was only temporary and both teeth were still causing pain. Dr. Jackson told Lake that one of the teeth would have to be pulled, but the record is silent on what treatment Dr. Jackson recommended for the other one.

The tooth that the dentist said would have to be pulled is the crux of the appeal. Lake again wanted the extraction done by an outside specialist. Although Dr. Jackson assured him that his mouth could be numbed successfully by use of a technique that had not been employed by her predecessor, Lake continued to refuse to let her pull the tooth and even complained to Wexford that he was suffering needlessly because of its refusal to provide him with treatment by providers of dental care who were outside the prison. Wexford replied that its staff at Hill Correctional Center was qualified and dedicated—and there is no contrary evidence besides Lake's say-so.

Dr. Jackson left Hill late in 2014 and Lake later agreed to let a different prison dentist extract the tooth. A local anesthetic was used during the extraction, but Lake complained afterward that the procedure had been painful.

The district judge ruled that, on the basis of the evidence summarized above, a jury would have to find that Dr. Jackson had been exercising professional judgment in predicting that administering a local anesthetic would enable her to extract the decayed tooth without inflicting significant pain. And indeed on this record the only reasonable inference is that Lake, not Dr. Jackson or Wexford, delayed the removal of the decayed tooth that he complained about to Dr. Jackson. Although he contends that she should have explained to him in greater detail the additional precautions

that she would take to minimize the risk of pain during the planned extraction, he has made no attempt to discover what those additional precautions might have been and whether they would have persuaded him to let her extract the tooth. And while he claims to have refused the treatment proposed by Dr. Jackson because he'd been "diagnosed" with a resistance to local anesthetics, there is no evidence of such a diagnosis.

Lake says he was sent to an outside dentist in 1999 to have a tooth pulled, after he complained that a local anesthetic administered by a dentist at the prison wasn't making him numb. But that isn't evidence that Dr. Jackson's method would have been painful. Other dental work was done on Lake at the prison, including replacing fillings in his teeth on January 8, 1999, May 21, 1999, and August 20, 2004—presumably all under a local anesthetic, as that was the prison's modus operandi. Not until 2012 was Lake again sent outside the prison for dental care, and that was because a specialist's help was needed after the tooth extracted in the prison had shattered.

He complains that the court should have authorized him to depose the dentist (and two assistants) who removed the decayed tooth after he finally gave permission to do so. Their testimony, Lake insists, would have established that the in-house extraction was not wholly free of pain, thus vindicating his belief that *any* in-house procedure using a local anesthetic would be painful. But what happened during a procedure conducted by a different dentist is not proof that Dr. Jackson knew that her planned method of anesthetizing Lake's mouth would be unsuccessful or would inflict more pain than an alternative method. Dr. Jackson submit-

ted an affidavit that was not controverted in which she testi-fied that she believed that the anesthesia techniques that she intended to have used on Lake would have enabled her to succeed in pulling the tooth with minimal discomfort to him.

Last, Lake argues that the district court erred in rejecting his request for an order directing a third-party healthcare professional to conduct a physical examination of his teeth, which, Lake claims, would establish that he does show re-sistance to local anesthetics. But considering how long ago the extractions occurred and how little evidence there is that they were more than ordinarily painful (except the extrac-tion that shattered a tooth), the probability that such an ex-amination would have warranted a trial was slight.

AFFIRMED.